## CIRCUIT COURT OF BEDFORD COUNTY

Linda Lee Corp.

v.

Covington Co.
and City of Bedford

January 14, 1993

Case No. (Law) CL-90-00701

BY JUDGE J. MICHAEL GAMBLE

I am writing this opinion letter to set forth my grounds for granting summary judgment on behalf of the City of Bedford in this case. On Friday, January 8, 1993, I granted summary judgment on the motion of the City of Bedford on the grounds of a special plea of sovereign immunity and upon the grounds of the public immunity doctrine.

I will address the factual background presented to the Court by the Amended Motion for Judgment and the supplemental information submitted by the Plaintiffs to oppose the Motion for Summary Judgment.

This action, of course, was instituted by the Plaintiff against The Covington Company and the City of Bedford as a result of damages that it is alleged to have sustained as a result of the alleged failure of both the City and Covington to design, construct, maintain, and operate at the Westgate Shopping Center an adequate and efficient storm water drainage system. Count I alleges that The Covington Company was negligent and failed to use reasonable care in the construction of the Westgate Shopping Center and the Summit Street extension in the City of Bedford because it failed to design and construct a storm water drainage system adequate to accommodate the flow of water in a certain unnamed creek which is a part of the storm water drainage system of the City of Bedford. Count II of the Motion for Judgment alleges that the City of Bedford had a duty to construct, maintain, and operate an adequate and efficient storm water drainage system. It further alleges that the City negligently allowed the construction of Westgate Shopping Center and the extension of Summit

Street with inadequate culverts and drains necessary to accommodate the flow of water in the unnamed creek which is a part of its storm water drainage system. The Motion for Judgment also alleges that the City permitted the construction of Westgate Shopping Center and the extension of Summit Street without the approval of any floodway modification by the Federal Emergency Management Agency ("FEMA") and the National Flood Insurance Program ("NFIP"). Further, Count II of the Motion for Judgment pleads that the City failed to follow its own ordinances governing the alteration of its storm water drainage system.

The City of Bedford has defended on a plea that it is protected by the doctrine of sovereign immunity or, in the alternative, that it is protected by the public duty doctrine.

I will first address the issue of sovereign immunity. The doctrine of sovereign immunity, of course, is viable in the Commonwealth of Virginia. Friend, *Personal Injury Law in Virginia*, § 11.2.1 (1990). This blanket immunity, however, does not apply to all functions undertaken by a municipality. In Virginia, a municipality may be held negligent for the performance of proprietary (ministerial) functions as opposed to governmental functions. *Fenon v. City of Norfolk*, 203 Va. 551, 555, 125 S.E.2d 808 (1962). As noted in *Fenon*, the underlying test is whether "the act is for the common good of all without the element of special corporate benefit, or for pecuniary profit. If it is, there is no liability; if it is not, there may be liability." *Id.* at 556. In *Stansbury v. City of Richmond*, 116 Va. 205, 206-207 (1914), the Supreme Court of Virginia considered a case against the City of Richmond where the Plaintiffs claimed that they received inadequate water for sanitary purposes in an annexed area. In that case, the Court held that the City could not be held liable "in adopting a general plan of drainage and determining when and where sewers shall be built and of what size and at what level." The Court held that these were decisions of a "*quasi* judicial" nature involving the exercise of discretion. *Id.* at 209; *cf. Freeman v. City of Norfolk*, 221 Va. 57, 266 S.E.2d 885 (1980).

In the instant case, the pleadings supported by the letters, depositions, ordinances, and studies submitted by the Plaintiff in opposition to the Motion for Summary Judgment all indicate that the City of Bedford in the instant case was determining what criteria should be followed with reference to the construction of the Westgate Shopping Center and the extension of Summit Street as it related to the flow of the unnamed creek. Rightly or wrongly, the City was implementing a plan to address the flow

of the unnamed creek used within its storm water drainage system when the flooding occurred in May, 1989. Just as in *Stansbury, supra*, it is clear that the City was in the formative stage of implementing the proper actions to address the flow of the unnamed creek which was affected by both the Westgate Shopping Center and the extension of Summit Street. This is purely a discretionary function even though it may not have been successful in controlling the flow of the unnamed creek in May, 1989. Thus, the actions of the City are governmental and protected by the shield of sovereign immunity.

It could be argued that the City in allowing The Covington Company to construct the shopping center and the extension of Summit Street was not engaged in the planning and development of the storm water drainage system, but in the operation of such system, and therefore falls within a proprietary as opposed to a governmental function. 57 Am. Jur. 2d, *Municipal Tort Liability*, § 347 (1988).

There are cases which seem to hold that the maintenance and operation of a sewer system constitute a proprietary function for which a municipality may be held liable. *Chalkley v. City of Richmond*, 88 Va. 402 (1891). Notwithstanding those decisions, this Court agrees with the view set forth in the Circuit Court of the City of Fredericksburg opinion in *Wilshin v. City of Fredericksburg*, 26 Va. Cir. 329 (1992), where the Court noted that recent decisions in the Commonwealth of Virginia reflect an expansive view of governmental (as contrasted with proprietary) functions of a municipality when those functions are directly connected to the health and safety of the citizens. As the Circuit Court of the City of Fredericksburg noted in *Wilshin*, the Virginia Supreme Court has held that the municipal collection of garbage is a governmental function. *Ashbury v. City of Norfolk*, 152 Va. 278, 147 S.E. 223 (1929); *Taylor v. City of Newport News*, 214 Va. 9, 197 S.E.2d 209 (1973). Likewise, in *Edwards v. City of Portsmouth*, 237 Va. 167, 375 S.E.2d 747 (1989), the Supreme Court of Virginia held that the provision of ambulance service is a governmental function. Also, in *Fenon v. City of Norfolk*, 203 Va. 551, 125 S.E.2d 808 (1962), clearing of trash and debris from streets was held to be a governmental function. *Taylor v. City of Charlottesville*, 240 Va. 367, 397 S.E.2d 832 (1990), held that regulation of traffic is also a governmental function.

Storm water drainage systems are certainly for the health and safety of all of the citizens. The reasons are so obvious that it is not necessary to explore them any further. This Court holds that the maintenance of a storm water drainage system is a governmental function involving discretion on

behalf of the health and safety of the citizens of the municipality, and thus the municipality is protected from suit by the doctrine of sovereign immunity with respect to a storm water drainage system.

In its Motion for Summary Judgment, the Defendant also urges the Court to grant, in the alternative, summary judgment on the basis of the public duty doctrine. This doctrine provides that a municipality's liability for proprietary functions by its employees may not be based upon the breach of a duty owed to the public as a whole, but only upon a duty owed to a particular person ("special relationship"). *Benson v. Kutsch*, 380 S.E.2d 36, 38-40 (W. Va. 1989). The protection of the public duty doctrine only arises if the function is ministerial rather than governmental. Thus, the Motion for Summary Judgment of the City on this ground is in the alternative. Accordingly, the decision of this Court holding that summary judgment should be granted on the public duty doctrine is likewise alternative in the event that the design, construction, operation, and maintenance of a storm water drainage system is deemed to be a proprietary as opposed to a governmental function.

The Virginia Supreme Court has recognized the public duty doctrine in *Marshall v. Winston*, 239 Va. 315, 319, 389 S.E.2d 902 (1990), where the Virginia Supreme Court held:

> There is no such thing as negligence in the abstract, or in the general . . . negligence must be in relation to some person . . . thus, in negligence claims against a public official, a distinction must be drawn between a public duty owed by the official to the citizenry at large and a special duty owed to a special identifiable person or class of persons . . . only a violation of the latter will give rise to civil liability of the official . . . .

The public duty doctrine has afforded protection for the municipal corporation as well as the municipal employee where a ministerial function is involved. *Wolfe v. City of Wheeling*, 387 S.E.2d 307 (W. Va. 1989).

The issue, then, is whether a special relationship has been established between the Plaintiff and the City which would make the City liable for the failure to enforce its regulatory ordinance. In the case of *Wolfe v. City of Wheeling*, 387 S.E.2d 307, 311 (W. Va. 1989), the Supreme Court of Appeals of West Virginia adopted the New York test to determine whether or not a special relationship had been created. The four criteria of that test are as follows:

(1) an assumption by local government entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured;

(2) knowledge on the part of the local government entity's agents that inaction could lead to harm;

(3) some form of direct contact between the local government entity's agents and the injured party; and

(4) that party's justifiable reliance on the local government entity's affirmative undertaking. *Cuffy v. City of New York*, 69 N.Y.2d 255, 260, 505 N.E.2d 937, 940, 513 N.Y.S.2d 372, 375 (1987).

Utilizing the test adopted by the New York courts to determine whether a special relationship has been established, it is clear from the pleadings and the supplemental information furnished by the Plaintiff that it has not. While the City of Bedford had adopted ordinances which require compliance with the flood plain regulations as adopted by FEMA and NFIP, there is no allegation or indication of a specific affirmative duty assumed by the City to act on behalf of the Plaintiff. It is clear that the City of Bedford did take steps to have Covington comply with the requirements of FEMA and NFIP. There is nothing alleged or shown which proves that the City assumed a specific duty to act on behalf of the Plaintiff as opposed to the general public. As noted by the Supreme Court of Virginia in *Marshall v. Winston*, 239 Va. 315, 319, 389 S.E.2d 902 (1990), an action assumed on behalf of the citizenry at large does not create a special duty. In the case at bar, nothing indicates that the City of Bedford was acting other than on behalf of the citizenry at large in attempting to comply with the city ordinances and the FEMA and NFIP flood plain requirements. Accordingly, the public duty doctrine will shield the City from any liability, even if its actions are proprietary rather than governmental as in this case.