## Wytheville.

MATTIE E. TURNER v. JAMES D. CARNEAL AND JAMES D. CARNEAL, JR., TRADING AS J. D. CARNEAL & SONS.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Gregory and Browning, JJ.

The opinion states the case.

*Thos. A. Williams* and *Hardin Harris,* for the plaintiff in error.

*L. O. Wendenburg* and *Wilmer L. O'Flaherty,* for the defendants in error.

CAMPBELL, J., delivered the opinion of the court.

This action was brought by Mattie E. Turner against James D. Carneal and James D. Carneal, Jr., to recover damages for personal injuries alleged to have resulted from the negligence of the defendants. There was a verdict in favor of the plaintiff. Upon motion of defendants, the trial court set aside the verdict and, pursuant to the provisions of section 6251 of the Code, entered judgment for the defendants.

Two assignments of error are relied upon: First, the action of the court in sustaining the motion of defendants to set aside the verdict of the jury on the ground that it was contrary to the evidence and without evidence to support it and in entering judgment for the defendants; second, the action of the court in overruling plaintiff's objection to and motion to strike out defendants' evidence in denial of possession and control of the property in question at the time of the injury, on the ground that defendants had not denied such possession and control by affidavit, as provided by section 6126 of the Code.

The facts may be thus summarized: Plaintiff, a resident of the city of Richmond, was desirous of renting a dwelling. She observed posted on a house situated on east Grace street, a placard reading "For Rent, J. D. Carneal & Sons." She telephoned defendants, who were real estate agents in whose hands the residence had been placed for the purpose of securing a tenant. In response to plaintiff's request, on the day of the accident defendants sent an employee—one Reeks—to show her the house. Arriving at the house, Reeks unlocked the door and admitted plaintiff and her sister and began to conduct them

on a tour of inspection. Under Reeks' lead, direction and guidance, the party, in a group, entered from the hall into the front parlor and inspected it; passed through connecting doors into the rear parlor and inspected it; from there entered the dining-room and looked at it, and from the dining-room passed in a compact group into the kitchen and inspected it. The kitchen was located about midway of the house and was lighted by one window in its western wall. The kitchen had two doors in its opposite north and south walls, each leading into a short transverse vestibule, one in front of and one in the rear of the kitchen. These transverse vestibules had no windows and connected by doors with a longer rear hall at right angles to them; this hall had no windows and ran from the transverse vestibule in front (north) of the kitchen to a bathroom and two rear bedrooms at the south end of the building. The eastern wall of the kitchen thus separated it from the front part of this main rear hall, the entrance to which, from the kitchen, might be had by passing from the kitchen through a door into the front transverse vestibule, or through an opposite door into the rear transverse vestibule, and from either transverse vestibule through a door in each case to the longer rear hall. In the floor of that portion of the long rear hall lying east of the east wall of the kitchen was a trap door leading down by steps to the basement. This trap door was nine or ten feet long, about the depth of the kitchen and, with the exception of an inch or so on each side, was the width of the hall—about three feet wide. In going through the hall, which was rather dark, plaintiff fell through the open trap door into the cellar, sustaining the injuries complained of.

Plaintiff's right of recovery is based on the contention that after her inspection of the kitchen she inquired of Reeks about the heating, and asked to see the furnace, situated in the cellar; that Reeks directed her to the hall where the trap door, with steps leading to the cellar, was situated; "that the defendants and each of them did negligently fail and refuse to properly

guard and light the said premises and did negligently fail and refuse to notify plaintiff of the unsafe condition of the premises.".

On behalf of the defendants it was shown that they had no knowledge of the trap door being open, and, in fact, did not know there was such an opening from the floor of the hallway into the cellar; that the only entrance to the cellar known to them was on the outside; that sometime prior to the accident a thief had entered the house from the outside, by way of the doorway leading into the cellar, and had stolen, from the upper part of the house, lead piping; that this fact was unknown to defendants until after the accident.

■ We are of opinion there is no merit in the first assignment of error. The burden was upon the plaintiff to show a positive act of negligence on the part of the defendants, that is, a breach of duty they owed the plaintiff. The mere fact that they were rental agents of the property is not sufficient to raise even a presumption of negligence. There is no direct evidence that defendants were either cognizant of the trap door or of its open condition. The only circumstantial evidence tending to show that defendants were aware of the existence of the trap door is the fact that they had had the renting of the premises for a period of years. That being true, it is argued that it is incredible that they were ignorant of existing conditions. Were this an action against the landlord, such argument would be entitled to more consideration. But such is not the case. There is not a scintilla of evidence that the defendants created the dangerous condition, not a vestige of proof that defendants left the trap door open. The only authority conferred upon them by the landlord was to collect the rent and make minor repairs. They had no authority to change any of the structural arrangements, and, in our opinion, the law did not impose upon them the duty of hiring a watchman to prevent a thief (who in this case, in all probability, left the trap door open) from entering the house.

In none of its aspects does the case at bar fall within the doctrine of "dangerous instrumentalities." To sustain the contention of plaintiff would require a holding that defendants were insurers of the safety of prospective tenants. While it is true that in Virginia the doctrine prevails that an owner or occupant of land who holds out an invitation to others to come upon his premises must exercise due care in keeping and maintaining his premises in a reasonably safe condition (*LeCato* v. *Eastern Shore Agricultural Ass'n,* 147 Va. 885, 133 S. E. 488), we know of no rule which makes them insurers of the safety of an invitee.

In our opinion the law governing the case was correctly stated in the following instructions of the court:

"The court instructs the jury that if you believe from the evidence in this case that on the day in question the plaintiff inquired of the defendants about the property at 7 east Grace street, and that the defendants thereupon instructed and had their employee to call for and carry the plaintiff to view the premises, it thereupon became and was the duty of the said defendants, by and through their said employee, to use reasonable care for the safety of the plaintiff while viewing said premises, if there was any danger to be encountered by the plaintiff in inspecting the premises with a view of leasing them, which was known, or, under all the circumstances of the case, ought to have been known, to the defendants. And if the jury further believe from the evidence that by reason of the trap door being open at the time of the visit the premises were rendered unsafe and that the defendants knew, or, in the exercise of ordinary care ought to have known, of this condition of the open trap door upon the occasion in question; that thereupon it became and was the duty of the said defendants to warn the plaintiff of said condition, and if the jury believe from the evidence the defendants failed in this duty and as direct and proximate result thereof the plaintiff was injured, without fault on her part, then you must find for the plaintiff.

"The court instructs the jury that ordinarily when the owner of a building places it in the hands of a real estate agent with authority to the agent to look out for and secure a tenant and to collect and account for the rent, then the agent is not in the position of the owner or occupant of the premises and is not under liability to those visiting the premises as prospective tenants in order to ascertain their suitability and condition, but in order to render the real estate agent, under such circumstances, liable for an injury occurring to a prospective tenant while visiting the premises, it must appear from a preponderance of the evidence that the agent has been guilty of some specific act of negligence. Therefore, in the present case, if the jury believe from all the evidence that the fact that the trap door, which caused the injury to the plaintiff because open, was not known to the defendant to have been open on the occasion of the plaintiff's visit, and that all the circumstances of the case do not show that the defendants ought to have known of the fact of the open trap door, then you must find for the defendants."

In the absence of direct proof, the circumstantial evidence is insufficient to warrant the verdict of the jury and no reversible error was committed by the court in setting aside the verdict and entering judgment for the defendants.

We are further of opinion that there is no merit in the second assignment of error.

■ Section 6126 of the Code provides:

"Where a bill, declaration, or other pleading alleges that any person or corporation, at a stated time, owned, operated, or controlled any property or instrumentality, no proof of the fact alleged shall be required unless an affidavit be filed with the pleading putting it in issue, denying specifically and with · particularity that such property or instrumentality was, at the time alleged, so owned, operated, or controlled."

That section is highly remedial and is to be liberally construed. *Green* v. *Lum,* 147 Va. 392, 137 S. E. 484. It is not,

however, applicable to the case at bar. The declaration does not allege, nor does the proof show that the defendants had such control of the premises as comes within the purview of the statute.

The judgment of the trial court is plainly right and will be affirmed.

*Affirmed.*